IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                  No. CR 19-499 KG/JHR

ANNETTE CHRISTINA CHAVEZ,

    Defendant.

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

This matter is before the Court on Defendant Annette Christina Chavez's Motion for Compassionate Release (Motion) (Doc. 51), the United States' Response to Defendant's Motion for Compassionate Release (Response) (Doc. 56), and Ms. Chavez's Reply in Support of Motion for Compassionate Release (Reply) (Doc. 57). The matter is now fully and timely briefed for the Court's consideration. After review of the briefing and the relevant law, the Court denies Ms. Chavez's Motion (Doc. 51) without prejudice.

    I.    *Background*

On April 12, 2019, Ms. Chavez pled guilty to a one count indictment charging bank robbery in violation of 18 U.S.C. § 2113(a). (Doc. 29) at 1; (Doc. 16) at 1. On August 15, 2019, the Court sentenced Ms. Chavez to 57 months imprisonment followed by three years of supervised release. (Doc. 39) at 2-3. Ms. Chavez is currently serving her sentence at FCI Dublin and is projected to be released from custody in January 2023. (Doc. 51) at 2; (Doc. 56) at 3.

On June 7, 2021, Ms. Chavez filed the instant Motion, requesting compassionate release due to the COVID-19 pandemic. (Doc. 51). Specifically, Ms. Chavez explains that she suffers from an

untreated hernia in her abdomen, anxiety, and depression. *Id.* at 3-4. In addition, Ms. Chavez argues that 18 U.S.C. § 3553(a) supports a sentence reduction to time served. *Id.* at 11-12. The United States opposes Ms. Chavez's request for relief. (Doc. 56).

*II.    Discussion*

The Tenth Circuit recently endorsed a "three-step test for 'courts considering motions filed under [18 U.S.C.] § 3582(c)(1).'" *See United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021) (quoting *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); *see also United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021) (explaining that "because this three-step test is consistent with the plain language of the statute, we adopt the test for use in this circuit"). Under this test, a district court may grant a motion to reduce sentence if: (1) "extraordinary and compelling reasons warrant such a reduction;" (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) it "considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable." *Maumau*, 993 F.3d at 831. Before reaching the merits evaluated in this three-part test, the Court begins with the threshold issue of whether Ms. Chavez exhausted her administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining that court may only award compassionate release after petitioner has "fully exhausted all administrative rights").

*A. Administrative Exhaustion*

To effectively exhaust under Section 3582, a petitioner must make an initial request for compassionate release under 28 C.F.R. § 571.61 and appeal a denial pursuant to Section 571.63. *See* 18 U.S.C. § 3582(c)(1)(A); *see also* 28 C.F.R. § 571.60-571.64 (Procedures for Implementation of 18 U.S.C. § 3582(c)(1)(A)). Specifically, after an initial denial by the warden, a petitioner "may appeal … through the Administrative Remedy Procedure," set forth in 28 C.F.R. § 542(B). 28 C.F.R. § 571.63(a). Only after the petitioner's request is denied by the General Counsel or the Director of the

BOP does the denial "constitute[] a final administrative decision." 28 C.F.R. § 571.63(b)-(c); *see also* 28 C.F.R. § 542.15(a) (explaining appeal first heard by Regional Director and then General Counsel). Alternatively, if thirty days lapse from receipt of the request by the warden with no response, a district court is empowered to consider the Section 3582(c)(1)(A) motion. 18 U.S.C. § 3582(c)(1)(A).

Here, Ms. Chavez requested compassionate release from the Warden at FCI Dublin on March 28, 2021. (Doc. 46) at 10. To date, the Warden has not responded to Ms. Chavez's request. *See* (Doc. 51) at 2. Consequently, because more than thirty days have lapsed without a response from the Warden, Ms. Chavez's administrative remedies are properly exhausted. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining exhaustion requirements); *United States v. Norwood*, 2020 WL 4914652, at *2 (W.D. Okla.) (explaining that "courts … have interpreted the language of the statute to allow consideration of the motion [] if the warden has failed to act within the 30 days of receipt of [petitioner's] request"). Therefore, the Court concludes it is empowered to consider the merits of Ms. Chavez's Motion requesting compassionate release.

B. *Extraordinary and Compelling Reasons Supporting Release*

Recently, the Tenth Circuit clarified that "[d]istrict courts, in carrying out the first step of § 3582(c)(1)(A)'s statutory test, decide for themselves whether 'extraordinary and compelling reasons' exist in a given case." *Maumau*, 993 F.3d at 833. Writing for the panel, Chief Judge Briscoe explained that "Congress did not … intend for the Sentencing Commission to exclusively define the phrase 'extraordinary and compelling reasons.'" *Id.* at 834. Instead, the Sentencing Commission's guidance, describing the "characteristic[s] or significant qualities or features that typically constitute 'extraordinary and compelling reasons,'" should be viewed by courts as "guideposts to serve as part of the general policy statements to be considered … under the second part of the statutory test…." *Id.*

3

Ms. Chavez contends that her hernia and mental health conditions constitute extraordinary and compelling reasons justifying her compassionate release. (Doc. 51) at 3. Specifically, Ms. Chavez explains that "over the last nearly 18 months, she has suffered from pain and severe discomfort" in her abdomen that she alleges has not been adequately treated or diagnosed while in custody. *Id.* Moreover, Ms. Chavez asserts that because of the BOP's failure to appropriately diagnose her abdominal pain, the existence of "a cancerous mass" cannot be "ruled out." *Id.* at 7. In support, Ms. Chavez argues that if the pain in her abdomen is caused from a cancerous mass, "she is certainly more susceptible to serious illness if she becomes infected with the virus that causes COVID-19." *Id.*

At present, Ms. Chavez's medical complaints are too speculative to justify the extraordinary remedy of release from custody. Most notably, Ms. Chavez asserts that her pain "may" be caused by cancer, there exists a "possibility" that she will require emergency surgery, and her intestines "may become 'strangulated.'" *Id.* at 4-7. However, Ms. Chavez's abdominal pain is currently being treated as a hernia, and no life-threatening symptoms or diagnoses have been identified by BOP staff. *See* (Doc. 51-2) at 39 (listing "ventral hernia" diagnosed on April 8, 2021); *id.* at 80 (rating abdominal pain as "3-4" on 10-point scale); *id.* at 84 (diagnosing abdominal pain as "constipation," prescribing medication, and discussing "ways to prevent constipation"). In addition, Ms. Chavez is currently scheduled to receive an ultrasound on August 9, 2021, to evaluate her abdominal wall and the "enlarging 4cm supraumbilical mass" in her abdomen. (Doc. 56-3) at 1. During her most recent evaluation by BOP medical professionals on June 4, 2021, Ms. Chavez reported no present pain but "some intermittent pain." *Id.* Therefore, it appears Ms. Chavez's complaints are being heard and adequately treated while in BOP custody. *See also* (Doc. 51-2) at 84 (advising Ms. Chavez to "report worsening or any new symptoms immediately").

Ms. Chavez's medical records further reflect that "she may be diagnosis or medication

4

seeking," she suffers from "low grade depression problems," and she does not meet "the full criteria for PTSD." (Doc. 51-2) at 11, 39. Ms. Chavez's complaints of anxiety and depression also appear to be well managed by BOP staff, and otherwise adequately controlled. *See* (Doc. 51-2) at 11 (reporting that Ms. Chavez's medication regiment "helped" her anxiety and depression); (Doc. 56-1) at 15 (noting that Ms. Chavez "reported she has never suffered from a mental or emotional condition"); (Doc. 51-2) at 44 (prescribing citalopram for mental health symptoms); *id.* at 70 (selecting "no" in response to "have you ever suffered from or received treatment for a mental illness"); *id.* at 78 (increasing medication dose to address recurrent symptoms of anxiety and depression). As a result, her medical records do not support the severity of her conditions that she alleges in her Motion.

Relatedly, while Ms. Chavez notes the existence of the COVID-19 pandemic, she does not indicate how her medical conditions exaggerate her health risks from contracting COVID-19. This is particularly problematic because Ms. Chavez has been vaccinated against the virus, lessening her risk of contracting a severe or life-threatening case of COVID-19. *See* Centers for Disease Control, *Moderna COVID-19 Vaccine Question*, https://www.cdc.gov/vaccines/covid-19/info-by-product /moderna/moderna-faqs.html#faq-6404-2-question (last visited June 30, 2021) (explaining "vaccine efficacy" rate of 94.1% in clinic trials). Even notwithstanding her vaccination, however, there is no evidence that hernias, anxiety, or depression create an increased risk of severe illness or death from contracting COVID-19. *See* Centers for Disease Control, *People with Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 30, 2021) (listing medical conditions that make individual "more likely to get severely ill from COVID-19"). Thus, the Court is unpersuaded that the COVID-19 pandemic creates an increased risk to Ms. Chavez that justifies her release from custody.

Ms. Chavez's complaints also appear better suited for a different avenue of relief. *See e.g.*, 42 U.S.C. § 1983. Indeed, Ms. Chavez complains generally of her conditions of confinement and the BOP's "deliberate indifference" to her medical conditions. (Doc. 57) at 2. These grievances are better addressed through alternative channels, where the Court can appropriately consider the need for redress outside the context of granting her release from custody.

Lastly, the Court notes that it does not take Ms. Chavez's concerns lightly. The Court understands the serious health risks posed from contracting COVID-19 and the fear associated with possible exposure. In addition, the Court notes that Ms. Chavez's medical records illustrate that she has diligently and continuously sought treatment for her physical and mental health symptoms. The Court encourages Ms. Chavez to continue seeking medical support as needed and to follow the healthcare advice of the medical professionals within the BOP. Indeed, the BOP is equipped and resourced, with appropriate staff and wholly separate medical institutions, to facilitate adequate medical care for Ms. Chavez while she remains in custody.

In sum, after review of Ms. Chavez's medical records and the arguments of counsel, the Court finds that Ms. Chavez's medical conditions do not amount to "extraordinary and compelling reasons" justifying compassionate release. Rather, the medical ailments Ms. Chavez complains of have no connection to exaggerated COVID-19 outcomes, and the BOP is aptly equipped to facilitate appropriate treatment for Ms. Chavez while in custody. As a result, Ms. Chavez's Motion is properly denied.

*III.    Conclusion*

In closing, Ms. Chavez has adequately exhausted her administrative remedies by requesting compassionate release from the Warden at FCI Dublin. As a result, the Court is empowered to enter a decision on the merits of Ms. Chavez's claim for relief. After review of the record, the Court

concludes that Ms. Chavez's medical conditions do not amount to "extraordinary and compelling reasons" justifying compassionate release. Therefore, the Court denies Ms. Chavez's Motion on these grounds without considering the Section 3553 factors.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE